IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **SHIRLEY LOVE** | § § § | |
| **VS.** | § § § | CIVIL NO. 2:23-cv-00149 |
| | § § | JURY DEMANDED |
| **HALLCON CORPORATION** | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

### I. INTRODUCTION

1. Plaintiff, Shirley Love brings this action to enforce her rights under the Americans with Disabilities Act, the Family and Medical Leave Act and for denial of benefits claim under section 502(a) of ERISA against her former employer Hallcon Corporation.

### II. JURISDICTION AND PARTIES

2. This Court has jurisdiction to hear the merits of Ms. Love's claims under 28 U.S.C. §1331 and 42 U.S.C. §12117(a).

3. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

   (a) a charge of employment discrimination on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

   (b) A Notification of Right to Sue was received from the EEOC on March 14, 2023.

   (c) This Complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

4. Plaintiff, Shirley Love, is a citizen of the United States and the State of Texas who resides in Gregg County, Texas.

5. All of the discriminatory employment practices and illegal conduct alleged herein were committed within the Eastern District of Texas.

6. Defendant, Hallcon Corporation is a Delaware corporation which provides employee transport services for railroads in Texas. Hallcon Corporation has not appointed an agent for service in the State of Texas, therefore, it may be served by way of process via the Texas Secretary of State, Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079

7. Hallcon Corporation is a "person" within the meaning of § 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

8. Hallcon Corporation is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA, 42, U.S.C. § 12111(7), and Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

9. Hallcon Corporation employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A).

10. Hallcon Corporation employs 50 or more employees and is an "employer" within the meaning of 29 USC § 2611(4)(A) of the Family and Medical Leave Act (FMLA).

## II.   STATEMENT OF FACTS

11. Defendant, Hallcon Corporation (hereinafter "Defendant" or "Hallcon") according to its website "provides mission critical, employee transportation services to the largest railroad operators in North America." Plaintiff, Shirley Love was employed by Hallcon from September 27, 2020 until she was terminated on May 15, 2022.

12. Love was employed as a driver for Hallcon. Her job was to transport train crew members to and from their trains.

13. On May 1, 2022, Love was on call for her job with Hallcon. Love received a call from dispatch, and she went to the yard to get her van. At that time, the company kept the keys in the BNSF yard office in a locker. Love went into the BNSF office to get the keys and as she was coming out of the office, walking down the steps, she twisted her ankle and fell on her knee. This

happened at 4 a.m. One of the Engineers saw Love fall - Nate Fortune. He came over to check on her and help her up. He was also on the crew that Love was supposed to be assisting that day. Love stood up and walked and got in her car to go get the van, but the more Love walked on her ankle the more it hurt.

14. Love then called Christina, her supervisor, she did not answer. Love also texted Christina and told her what had happened and that she needed to go to the ER. No answer. Love then called Red (James) Willis who is the supervisor for the Union Pacific side. Willis answered and Love told him what had happened, and he directed Love to go to the ER and to call dispatch and let them find someone else to take the trip. Love did.

15. At that point, Love went to Christus Good Shepherd on Hawkins Pkwy in Longview, Texas. The physicians diagnosed Love with a sprained ankle with torn ligaments. They put her in a boot with crutches.

16. Love called Red, and Christina finally texted Love back about 6 hours later. She told Love to keep all the paperwork to give to her which Love did. Love talked to Hiram Mathis, who is Christina's boss, and explained what had happened. Mathis gave Love the name of the workers comp office contact. Her name is Margarita C. and he asked that Love send all the paperwork to her, which she did.

17. At this time Love's ankle was still hurting so she contacted Margarita C. who gave her the name of a doctor's office in Longview where Love could be seen, Healthcare Express. Love had an appointment set for May 5th.

18. On May 5th, Love had a drug screen. Love knew she would have an issue with the drug screen because she takes hydrocodone daily with a prescription for her permanent back impairment. As expected, the drug screen came back positive because of Love's hydrocodone prescription. The positive drug screen was sent to Hallcon corporate.

19. Love contacted her supervisor Christina and told her what had happened. Christina told her that she would have to report it, and Love told her right then that she already knew about the prescription and that she had passed the drug screening when she got the job. Christina said she still had to report it to corporate. On the next day Love was seen by a doctor who took her off work for two weeks until her next appointment. Love forwarded all the paperwork to her supervisor, Christina. Love then called Hiram and explained what had happened, he then told her that Hallcon wanted to terminate her. Love explained to him that she had a prescription for the medication that caused the positive drug screen and that when she started with Hallcon that she had passed the drug screen.

20. On May 13th, Love was released to go back to work. Love called Hiram and he said good get back to work. Before she was able to take her next shift, the UP supervisor, Red called Love and said that she had been put on administrative hold and he didn't know why. Love was informed later that day that she was terminated and was given no reason.

### III.    CLAIMS FOR RELIEF

### (A) AMERICANS WITH DISABILITIES ACT

21. The allegations contained in Paragraphs 1 through 20 are hereby incorporated by reference.

22. As a result of her medical conditions described herein, Love has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2). More particularly, Love has impairments that substantially limit one or more of her major life activities, has a record of such an impairment, and/or was regarded by Hallcon as having such an impairment.

23. Love is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Love is an individual with a disability who, with

reasonable accommodation, can perform the essential functions of her job for Hallcon.

24. The effect of these unlawful practices has been to deprive Love of equal employment opportunities, and to otherwise adversely affect her employment status as an individual with a disability or an individual who was regarded as having a disability.

25. Based upon the stated allegations, Love asserts two claims under the ADA: (1) failure to make reasonable accommodation to Love's disabilities, which constitutes discrimination against Love with respect to terms, conditions, or privileges of employment in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A). In connection with Love's accommodation claim, Hallcon failed to undertake any good faith efforts, in consultation with Love, to identify and make a reasonable accommodation with Love; and (2) Terminating Love because it regarded her as being disabled.

26. Love alleges that Hallcon regarded her as being disabled when it made the decision to terminate her employment. Love also alleges that Hallcon violated the ADA when it failed to accommodate her actual disability.

### (B) FAMILY AND MEDICAL LEAVE ACT

27. The allegations contained in Paragraphs 1 through 20 are hereby incorporated by reference.

28. The FMLA was created to protect an employee's right to take leave to attend to the medical needs of himself/herself or a family member. See 29 U.S.C. § 2601(b)(2). As a means of providing such protection, the FMLA contains two distinct provisions. First, the FMLA protects the substantive rights of an employee taking leave under the Act, including the right of an employee to return from leave to the same position or an equivalent position offering equivalent employment benefits, leave, pay and other terms and conditions. 29 U.S.C. § 2614. An employer may not use an employee's FMLA leave as a negative factor in employment actions. 29 C.F.R. 825.220(c)

29. To prevail on a cause of action for interference with FMLA rights, an employee must prove both that the employer interfered with, restrained, or denied his or her exercise of FMLA rights, and also that the employee was prejudiced by such violation. More specifically, the plaintiff must establish 1) that she is an eligible employee; 2) that the defendant is an employer as defined by the FMLA; 3) that she is entitled to leave under the FMLA; 4) that she gave notice of intent to take leave; and 5) that she was denied benefits to which she was entitled. The McDonnel Douglas framework does not apply to FMLA interference cases.

30. Love contends that Hallcon interfered with her FMLA rights by terminating her as a result of her need to miss work due to her on-the-job injury.

31. The second distinct provision of the FMLA prohibits an employer's discrimination or retaliation against an employee for exercising her rights under the FMLA. See 29 U.S.C. § 2615. Under the McDonnell Douglas framework described above, an employee can make a prima facie case of retaliatory discharge under the FMLA by showing "(1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge."

32. Love asserts that Hallcon terminated her employment in retaliation for her request for protected medical leave.

### (C) ERISA

*Section 502(a)(1)(B) claim*

33. Love was a beneficiary of the ERISA plan that should have paid her benefits regarding her on-the-job injury.

34. Defendant denied Love's claim for benefits, and it denied her appeal.

35. Therefore, Love brings this claim under § 502(a)(1)(B) of ERISA for denial of benefits. See 29 U.S.C. § 1132(a)(1)(B).

36. Love exhausted all administrative prerequisites to bring this claim.

## IV.  ACTUAL DAMAGES

37. As a direct and proximate result of Hallcon's violation of the FMLA, violation of the ADA and ERISA, Love has suffered economic damages in the form of lost wages and benefits and lost employment opportunities.

38. As a direct and proximate cause of Hallcon's violations of the ADA, Love has suffered mental anguish, loss of enjoyment of life, and other non-pecuniary losses which entitle her to be entitled to recover compensatory damages.

39. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

## V.  PUNITIVE DAMAGES

40. The conduct committed by Hallcon against Love is the type of conduct demonstrating malice or reckless indifference to the rights of Love. Therefore, Plaintiff Love brings suit for punitive damages.

## VI.  LIQUIDATED DAMAGES

41. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Love further seeks liquidated damages in an amount equal to wages, salary, employment benefits, or other compensation lost under the provisions of the FMLA and ERISA.

## VII.  ATTORNEYS' FEES AND EXPERT FEES

42. A prevailing party may recover reasonable attorneys' and experts' fees. SEE 42 U.S.C. §2000e-5(k). Love seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Love additionally brings suit for attorney's fees, expert fees and other costs pursuant to 29 U.S.C.

§2617(a)(3).

## VIII.   JURY DEMAND

43.   Love demands trial by jury.

## IX.   RELIEF REQUESTED

44.   Plaintiff Love requests the judgment of this Court against Defendant, Hallcon, as follows:

(a)   Find and hold that Love has suffered from Defendant's acts of discrimination on the basis of her actual or perceived disability;

(b)   Order that Plaintiff be awarded the back pay she would have earned, with related monetary benefits and interest thereon, had he been reinstated to his position;

(c)   Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(d)   Award Plaintiff liquidated damages pursuant to the FMLA;

(e)   Award Plaintiff damages for violation of ERISA;

(f)   Award Plaintiff attorney fees and expert fees, including litigation expenses, and the cost of this action; and

(g)   Grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
HOMMEL LAW FIRM PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
(903) 596-7100 Phone/Fax

ATTORNEY FOR PLAINTIFF